# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SUSAN R. DURBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 13-1284-JWL |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.    Background

Plaintiff applied for SSD and SSI alleging disability beginning December 31, 2008.  (R. 12, 215-16).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She alleges the

Administrative Law Judge (ALJ) erred in excluding certain record evidence from his consideration of disability and erroneously considered Plaintiff's activities of daily living in his credibility determination.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

     The court addresses each issue raised in the order presented in Plaintiff's Brief.

## II.    Improper Consideration of Evidence

     Plaintiff claims the ALJ erroneously found that Plaintiff "worked part time at a

retail store where she unloaded trucks and stocked shelves, as well as at a fast food

restaurant and community center;" erroneously relied upon his personal medical opinion

in finding that Plaintiff had extensive nerve damage from her history of

methamphetamine use; and erred in finding that "no credible treating source imposed

functional limitations in excess of the State examiners' assessments."  (Pl. Br. 48-50)

(quoting (R. 20, 21)).  Plaintiff also claims the ALJ completely failed to consider, and

erroneously ignored, the opinions of her treating physicians, Dr. Rodgers and Dr. Goin,

and of her physical therapist, Mr. Mark Hall.  Id. at 51-55.

     First, the court finds that substantial record evidence supports the ALJ's findings

of which Plaintiff complains.  With regard to the ALJ's findings that Plaintiff worked part

time at a retail store (K-Mart), a fast food restaurant (McDonald's), and a community

center, he specifically cited to Exhibits 6D, 1E, 5F, and to Plaintiff's hearing testimony.

(R. 20).  And, these exhibits support his findings.  Exhibit 6D demonstrates that Plaintiff

was paid in the third and fourth quarters of 2009 and in the first and second quarters of

2010 for work at K-Mart Corporation, and was paid in the third quarter of 2010 for work performed at McDonald's in Hutchinson, Kansas.  (R. 230).  Exhibit 1E is a Work Activity Report in which Plaintiff reported working 32 hours at McDonald's in Hutchinson, KS in July 2010, and reported working 24 hours a week on average at K-Mart between September 2009 and June 2010.  (R. 247).  Exhibit 5F is a Consultation Report of a psychological examination in which the examiner, Dr. Berg, recorded Plaintiff's report that she last worked at a retail store for several months ending in June 2010.  (R. 497).

In her hearing testimony Plaintiff testified that she last worked at K-Mart on June 15, 2010, and at McDonald's for two days on July 22 and 23.  (R. 62).  She testified that she started at K-Mart as a cashier, and that they promoted her to a position in which she unloaded trucks and put stock on the shelves.  Id. at 63.  When the ALJ questioned her about unloading trucks, she testified that when she first started that position, she unloaded the trucks, but that "then the girls knew I was hurting so bad that they'd help me sit on a little stool."  Id. at 63-64.  Moreover, in an Adult Function Report dated February 2, 2011, Plaintiff stated that "maybe twice a month" she goes to a community center to help pass out food, and that although she needs help "moving the bulk boxes," she "can do the main task alone."  (R. 347).  Clearly the record evidence supports the ALJ's findings with regard to Plaintiff's exertional activities at K-Mart, McDonald's, and a community center.

Plaintiff's argument that she had to quit unloading the trucks and that she was unable to continue working at McDonald's does not undermine the ALJ's findings.  The

ALJ did not find that Plaintiff is <u>now</u> able to perform the extensive lifting and standing required by these activities.  His reliance upon those activities was to show that Plaintiff is not as limited as she alleges, and that she attempted to perform jobs requiring significantly greater abilities than she alleges she is able to do.  Rather, the ALJ found that Plaintiff is able only to perform a limited range of light work and is able only to stand and/or walk for two hours total in an eight-hour workday.  Plaintiff's assertion that she "never worked at a community center" (Pl. Br. 49) is beside the point because the volunteer help she provided at the community center also supports the ALJ's finding that her activities demonstrate she is not as limited as she alleges.

Citing Exhibits 3E34, 4E8, and 5F, the ALJ noted Plaintiff's testimony "that she has substantial trouble performing daily living activities due to her shoulder impairment, fibromyalgia, and extensive nerve damage in her extremities from her history of methamphetamine use."  (R. 20).  Plaintiff quotes this statement by the ALJ, and argues that the ALJ provided his "own pronouncement of medical diagnosis and prognosis" regarding nerve damage due to methamphetamine use.  (Pl. Br. 50).  However, contrary to Plaintiff's argument, the ALJ was not providing a lay medical opinion, he was explaining Plaintiff's testimony regarding nerve damage due to methamphetamine use.  Plaintiff primarily relies on the ALJ's comment to Plaintiff at the hearing that methamphetamine use "also can cause nerve damage as you probably know."  (R. 66).  She argues that this statement of "fact" is merely the ALJ's personal medical opinion, and has no basis in the record evidence.  However, in response to the ALJ's statement of alleged "fact" at the

hearing, Plaintiff responded, "I know that."  Thus, at the very least, the medical opinion at

issue is that of both the ALJ, and the Plaintiff.  Moreover, and most importantly, the

decision does not rely upon this alleged "fact."  The ALJ does not state that Plaintiff has

extensive nerve damage in her extremities due to methamphetamine use.  Rather, he is

relating Plaintiff's testimony that "she has substantial trouble performing daily living

activities due to . . . extensive nerve damage in her extremities from her history of

methamphetamine use."  (R. 20).  The record evidence cited by the ALJ supports his

understanding.  Exhibit 4E is a "Disability Report - Adult," completed by Plaintiff.  (R.

273-80).  At page eight of that report, as cited by the ALJ, Plaintiff stated, "I was addicted

to crystal methamphetamines on and off from about age 12 until about early 2009 which I

believe and my doctor believes has contributed to the nerve damage in my legs, arms, and

hands."  (R. 280).  Clearly, the record supports the ALJ's finding that Plaintiff testified

she has nerve damage in her extremities due to methamphetamine use.

Finally, Plaintiff claims that the ALJ's finding that "no credible treating source

imposed functional limitations in excess" of the state agency consultants' assessments (R.

21) is "fantastically inaccurate" because two physical therapists Dr. Osusanmi and Mr.

Hall, and two treating physicians, Dr. Rodgers and Dr. Goin opined regarding functional

limitations in excess of the state consultants' assessments.  However, the ALJ properly

accorded "little weight" to Dr. Osusanmi's opinion regarding limitations, and Plaintiff

points to no functional limitations suggested by the physicians or the other physical

therapist, and does not show that any limitations opined by them are greater than those assessed by the state agency consultants' assessments.

With regard to Dr. Osusanmi, Plaintiff argues that the ALJ erroneously ignored his opinion because he is not "a proper treating source."  (Pl. Br. 51).  As Plaintiff's argument suggests, the ALJ found that Dr. Osusanmi is not an "acceptable medical source," weighed Dr. Osusanmi's opinions pursuant to Social Security Ruling (SSR) 06-3p, and accorded them "little weight" because he found little support for them in the record.  (R. 22).  Although Dr. Osusanmi is apparently a "Doctor of Physical Therapy" (DPT) (R. 543), he is not a physician, psychologist, or other medical professional within the meaning of an "acceptable medical source" as defined by the regulations.  20 C.F.R. §§ 404.1513(a), 416.913(a).  Therefore, he is an "other medical source" within the meaning of SSR 06-3p and the regulations, and his opinions must be weighed in accordance with that ruling.  See also, 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (defining "other medical sources").  Because Dr. Osusanmi is not an "acceptable medical source," he is also, by definition, not a treating source.  20 C.F.R. §§ 404.1502, 416.902 (treating source limited to physician, psychologist or other acceptable medical source).  Moreover, even assuming Dr. Osusanmi is a treating source in the broadest sense because he treated Plaintiff, the ALJ accorded the therapist's opinion only "little weight," and explained his bases for doing so.  Plaintiff has not shown error in any of those bases.  Plaintiff points to no error in the ALJ's findings with regard to Dr. Osusanmi.

With respect to Plaintiff's physical limitations and abilities, a single decisionmaker provided a Physical Residual Functional Capacity Assessment form dated November 23, 2010. (R. 130-37). That form was "affirmed as written" by Dr. LaVerne Barnes for the state agency on May 28, 2011. (R. 532). Thus, Dr. Barnes expressed the opinion that Plaintiff is able to stand and/or walk, and to sit about 6 hours each in a workday, and may occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. She also opined that Plaintiff is limited to reaching overhead only frequently with the right hand and arm because "she does have ongoing right shoulder pain with crepitus." (R. 133). The ALJ found that no credible treating source imposed greater functional limitations than these on Plaintiff.

Plaintiff argues that Mr. Hall, her physical therapist, and Dr. Goin and Dr. Rodgers all imposed greater limitations, but that the ALJ merely ignored these opinions. But Plaintiff points to no specific functional limitations opined by these medical providers which are demonstrably greater than those opined by Dr. Barnes. Plaintiff points to Mr. Hall's statements that Plaintiff has significant stiffness in both shoulders, and has typical symptoms of adhesive capsulitis. (Pl. Br. 51). She quotes Dr. Rodgers's treatment note that Plaintiff "is having a fair amount of bilateral shoulder pain, which shows pronounced diminished abduction as though she has bilateral frozen shoulder." (Pl. Br. 54) (quoting R. 438). She also quotes from Dr. Goin's treatment note:

> Susan is following up regarding her adhesive capsulitis, right shoulder. She states she has continued to make improvements.

> On exam, she has not made much improvement in range of motion. She
> continues to have approximately 135 degrees of forward flexion, abduction
> to 100 degrees, external rotation at her side 45 to 50 degrees, which his [sic]
> slightly improved. Rotator cuff strength continues to be intact.
>
> ASSESSMENT: Adhesive capsulitis.

(R. 428) (quoted in (Pl. Br. 54-55)). But, none of the record evidence cited or quoted by

Plaintiff contains any <u>functional</u> limitations. Therefore, the ALJ is correct in stating that

no treating source has provided greater limitations than assessed by Dr. Barnes.

The ALJ acknowledged that Plaintiff has adhesive capsulitis (or frozen shoulder),

and he found that is one of Plaintiff's severe impairments. (R. 16). Moreover, limitations

in abduction, flexion, and rotation, as quoted from Dr. Goin's notes are not opinions

regarding <u>functional</u> limitations, and neither Dr. Goin, Dr. Rodgers, nor Mr. Hall opined

regarding functional limitations resulting from Plaintiff's limitations in flexion, rotation,

or abduction. Moreover, Dr. Barnes had Dr. Goin's, Dr. Rodgers's, and Mr. Hall's

records before her on May 28, 2011 when she assessed functional limitations for Plaintiff.

Plaintiff has shown no error in the ALJ's finding that no credible treating source provided

greater limitations than those assessed by Dr. Barnes.

Plaintiff also argues that it was error for the ALJ to ignore the medical source

opinions of Mr. Hall, Dr. Goin, and Dr. Rodgers. However, she points to no medical

source opinion by any of these providers which was ignored. The regulations define

"medical opinions" as "statements . . . that reflect judgments about the nature and severity

of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and

prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  The regulations provide that such opinions may not be ignored and <u>all</u> medical opinions will be evaluated in accordance with factors contained in the regulations.  <u>Id.</u> §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2014).  In the decision, the ALJ considered and discussed the nature and severity of Plaintiff's impairments, and discussed her symptoms, diagnoses, and prognosis.  Plaintiff points to no opinion of either of these doctors or of Mr. Hall which was different than the symptoms, diagnoses, or prognosis discussed by the ALJ in this opinion, and which might, therefore, arguably have been ignored by the ALJ.  The mere fact that the ALJ did not mention any of these providers by name is not controlling in this case.  None of these three providers presented an opinion which was contrary to, or more limiting than, the limitations assessed by the ALJ.  Therefore, there was no need to address their opinions with greater particularity in the decision at issue.  Dr. Osusanmi, on the other hand, provided an opinion which contained functional limitations which were contrary to the assessment of the ALJ.  Therefore, the ALJ specifically discussed Dr. Osusanmi's opinion and explained his reasons for according "little weight" to Dr. Osusanmi's opinion.

## III.    Credibility

Plaintiff argues that the ALJ improperly used her activities of daily living in analyzing the credibility of her allegations of symptoms.  She argues that the ALJ's "version of Plaintiff's activities of daily living is simply inaccurate and has been unfairly

manipulated to depict Plaintiff's condition." (Pl. Br. 55). She argues that the ALJ's findings regarding activities of daily living are "deficient and ambiguous." (Pl. Br. 57).

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

In her argument regarding credibility, Plaintiff quotes the ALJ's step two analysis in which he applied the Commissioner's Psychiatric Review Technique and determined that with regard to mental functioning in the broad area of activities of daily living, Plaintiff has only a mild restriction. (Pl. Br. 55).

> In activities of daily living, the claimant has mild restriction. The claimant regularly unloaded trucks, worked at a fast food restaurant, drives, washes laundry, cleans dishes, takes out the trash, prepares meals, cleans her house,

12

> spends time with her grandchildren, and takes care of pets.  (8E, 9E, SF).
> Based on the evidence, the undersigned finds the claimant's <u>mental
> impairment</u> causes her no more than mild difficulties in this domain.  This
> determination is consistent with the opinions of Carol Adams, Psy.D. and
> Benjamin Blackman, MD.  (7-8F, 13F).

(R. 18) (emphasis added by the court).  Plaintiff's argument of error in considering

activities of daily living with regard to the ALJ's credibility determination misses this

distinction.  The point of the ALJ's analysis quoted above is that Plaintiff has only a <u>mild</u>

<u>mental restriction</u> in performing activities of daily living.  Plaintiff argues that the ALJ

erred in stating that Plaintiff washes laundry and cleans dishes, because the record reveals

Plaintiff also alleged limitations in these activities--that she would leave the laundry in

the dryer until her husband comes home to take care of it, and that she only did "light

dishes" for about ten minutes at a time.  (Pl. Br. 55-56).  Plaintiff's argument is irrelevant

to the ALJ's discussion, because the argument relates to physical limitations, whereas the

ALJ was pointing out that Plaintiff's <u>mental impairments</u> cause only a mild restriction on

her performance of daily activities.

Elsewhere, the ALJ provided his analysis regarding the credibility of Plaintiff's

allegations of disabling symptoms:

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are inconsistent with the above
> residual functional capacity assessment.  The claimant stated she cannot sit
> or stand for long amounts of time, had limited movement in her arm, and
> cannot work.  (8E).  The undersigned notes the claimant worked part time at
> a retail store where she unloaded trucks and stocked shelves, as well as at a

13

fast food restaurant and community center.  (6D, 1E, 5F, hearing
testimony).  The claimant has further testified that she has substantial
trouble performing daily living activities due to her shoulder impairment,
fibromyalgia, and extensive nerve damage in her extremities from her
history of methamphetamine use.  (3E34, 4E8, 5F).  However, the evidence
does not show the claimant received treatment for such significant
impairments, no credible treating source imposed functional limitations in
excess of the State examiners' assessments of any kind, and the evidence
shows the claimant can perform a broad range of daily living activity.  The
undersigned finds the objective and subjective evidence of record does not
fully support the claimant's allegations.  Based on this evidence, the
undersigned does not find the claimant's allegations more convincing than
the medical opinions and other evidence of record.

(R. 20-21).

In his credibility analysis, the ALJ relied upon Plaintiff's work activities to show

that Plaintiff can sit, stand, and move her arm to a greater extent than she represented.

The ALJ recognized Plaintiff's allegation that her shoulder impairment, fibromyalgia, and

nerve damage caused substantial limitation in her activities of daily living, but he

discounted these allegations because (1) she did not receive treatment for such significant

impairments, because (2) no credible treating source imposed greater restrictions than the

state agency consultants, and because (3) she can perform a broad range of daily

activities.  Plaintiff's allegations of error in the credibility determination simply do not

recognize or address the ALJ's rationale.  The record evidence supports the rationale

given by the ALJ, and the court may not reweigh the evidence or substitute its judgment

for that of the ALJ.  The evidence also supports the ALJ's determination that Plaintiff

performs a broad range of daily activities.  And, although Plaintiff argues that there are

limits on certain of her daily activities, she does not argue that she does not perform a

broad range of such activities.  Giving the ALJ's credibility determination the deference it is due, the court finds no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 13th day of November 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**